UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERNARD S. LEE,<br><br>     Plaintiff,<br><br>v.<br><br>CLEARENCE M. KELLEY, *et al.*,<br><br>     Defendants. | Civil Action No. 76-1185 |
| SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE,<br><br>     Plaintiff,<br><br>v.<br><br>CLEARENCE M. KELLEY, *et al.*,<br><br>     Defendants. | Civil Action No. 76-1186 |

**MOTION BY THE UNITED STATES TO UNSEAL TAPES AND DOCUMENTS**

In 1977, this Court ordered the Federal Bureau of Investigation ("FBI") to assemble records about the FBI's surveillance and monitoring of the Reverend Martin Luther King, Jr. and turn those records over to the Archivist of the United States, where they would remain sealed for fifty years—until January 31, 2027.

Forty-eight years later, in January 2025, President Donald Trump ordered the Attorney General to review documents about the assassination of the Reverend King and release them to the public, because the American people have an interest in full transparency about this key historic event. To maximize this transparency objective, the records sealed in this case should be part of the Attorney General's review. The United States therefore respectfully requests that the Court modify its sealing order to end now, about one year and nine months before the fifty-year seal would expire by its terms.

The government submits that this motion is supported by good cause. First, there is a strong public interest in understanding the truth about the assassination of the Reverend King, and some of the sealed records will inform that understanding. Second, the records have remained sealed long enough—well over fifty years from when they were created.

Counsel for the United States has conferred with counsel for Southern Christian Leadership Conference (the "Conference") (plaintiff Bernard Lee is deceased) and is informed that the Conference currently opposes this motion.

## BACKGROUND

**I.  This Court's Sealing Order**

On June 25, 1976, Plaintiffs Bernard Lee (an associate of the Reverend King) and the Conference (which the Reverend King headed until his death) filed these two civil actions against the Director of the FBI and several FBI agents. They alleged that, between 1963 and 1968, the FBI unconstitutionally monitored the conversations of the Reverend King and other Conference

employees. Ex. A, Lee Am. Compl. ¶¶ 4–5, 8; Ex. B, Conf. Am. Compl. ¶¶ 5–8. They demanded money damages and an order that any recording of the monitored conversations be produced under a protective order. Ex. A, Lee Am. Compl. at 4–5 ¶¶ 1–2; Ex. B, Conf. Am. Compl. at 5 ¶¶ 1–3.

The government moved to dismiss the amended complaint, which the Court granted. Ex. C, Mem. Op. & Order at 3 (Jan. 31, 1977). The Court agreed with the government that the demand for money was barred by the applicable three-year statute of limitations, because the plaintiffs should have been aware of the alleged monitoring from extensive media reporting in the mid-to-late 1960s. *Id.*

Pursuant to an apparent compromise agreement between the plaintiffs and the government (which does not appear to be memorialized on the docket), the Court directed the FBI to relinquish tapes and documents about the alleged recorded conversations to the Archivist of the United States. Ex. C, Mem. Op. & Order at 3–4 (Jan. 31, 1977); *see S. Christian Leadership Conf. v. Kelley*, 747 F.2d 777, 778 (D.C. Cir. 1984) (noting that this solution was "acceptable to the defendants"). Specifically, the Court ordered the FBI to "assemble . . . all known copies of the recorded tapes, and transcripts thereof, resulting from the FBI's microphonic surveillance, between 1963 and 1968, of the plaintiffs' former president, Martin Luther King, Jr.; and all known copies of the tapes, transcripts and logs resulting from the FBI's telephone wire-tapping, between 1963 and 1968, of the plaintiffs' offices in Atlanta, Georgia and New York, New York, the home of Martin Luther King, Jr." and to "deliver said tapes and documents to the custody of the National Archives and Records Service, to be maintained by the Archivist of the United States under seal for a period of fifty (50) years." Ex. C, Mem. Op. & Order at 3–4 (Jan. 31, 1977). The Archivist was instructed to "not disclose the tapes or documents, or their contents, except pursuant to a specific order from

a court of competent jurisdiction requiring disclosure." *Id.* at 4. The FBI complied with the Court's order.

## II. Executive Order 14,176

On January 23, 2025, President Trump signed Executive Order 14,176 regarding the declassification of records about the assassinations of President John F. Kennedy, Senator Robert F. Kennedy, and the Reverend King. Exec. Order No. 14,176, 90 Fed. Reg. 8641 (Jan. 23, 2025). The order notes that more than fifty years have passed since those men were assassinated and finds that "their families and the American people deserve transparency and the truth" about those important historic events. *Id.* at 8641. The order therefore instructs the Director of National Intelligence and the Attorney General to review records related to the three assassinations and to present a plan "for the full and complete release of these records." *Id.* at 8642.

## ARGUMENT

The Court should unseal the tapes and documents about the FBI's surveillance and wiretapping of the Reverend King and the Conference so that the Attorney General may review them, identify any records about the assassination of the Reverend King, and release those records in compliance with the President's executive order. As explained further below, the public has a strong interest in the Reverend King's assassination, and the materials have already been withheld from the public for a sufficiently extended amount of time.[1]

First, there is a strong public interest in the assassination of the Reverend King. It is one of the pivotal events in the history of the United States, and the King family and the American public

---

[1] The tapes and documents are not "judicial records." They were not "intended to influence" the Court, and the Court did not make "decisions about them." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128 (D.C. Cir. 2020). The six-factor *Hubbard* analysis therefore does not govern this request to unseal. *Id.* at 1131 (citing *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)).

"deserve transparency and the truth" about what occurred. Exec. Order No. 14,176, 90 Fed. Reg. 8,641, 8,641 (Jan. 23, 2025). There can be no doubt that some of the sealed tapes and documents contain information that would inform the public's understanding of that truth. That is evident from the interest in the sealed records shown by two major investigations into the assassination of the Reverend King. In January 1977, a special Task Force created by the Department of Justice issued a report on the Reverend King's assassination and considered whether there had been any involvement in the assassination by the FBI (the Task Force found that there was not). *Lesar v. Dep't of Just.*, 636 F.2d 472, 475–76 (D.C. Cir. 1980). As part of its investigation, the Task Force reviewed the materials sealed by this Court and summarized them in a nonpublic appendix attached to its final report. *Id.* at 477.[2] And, in 1978, the House Select Committee on Assassinations sought and obtained a modification of the Court's sealing order to permit its investigators to access and review about 845 pages of the sealed materials. *See Lee v. Kelley*, 99 F.R.D. 340, 342–43 n.2 (D.D.C. 1983); *see also* H.R. Rep. No. 95-1828, pt. 2, at 415–16 (1979). The interest of these investigating bodies in the sealed records demonstrates that some of them are relevant to the Reverend King's assassination. The King family and the public deserve to see those records for themselves.

Second, the records have remained shielded from the public for long enough. The Court ordered that the records remain sealed for fifty years, until January 31, 2027, which is relatively soon. Ex. C, Mem. Op. & Order at 4 (Jan. 31, 1977). Indeed, the duration of the seal is already ninety-six percent lapsed. Shaving off the remaining year and nine months so that the records can be included in the Attorney General's review of assassination records will have no significant

---

[2] A court in this district deemed those summaries subject to FOIA and ordered the government to release them over the government's contention that the sealing order in this case prevented it from doing so. *See Lesar v. Dep't of Just.*, 455 F. Supp. 912, 923 (D.D.C. 1978).

impact on the relief originally ordered by the Court. This is especially true here because the fifty-year duration of the seal was relatively lengthy. Fifty years is on the high end of how long sensitive documents usually are kept secret. For example, presidential records can be restricted for up to twelve years, 44 U.S.C. § 2204, predecisional deliberative documents remain privileged for twenty-five years, 5 U.S.C. § 552(b)(5), and even some national security information is automatically declassified after twenty-five years, unless exempt, Exec. Order 13,526, § 1.5(b)–(c), 75 Fed. Reg. 707, 709 (2010). Moreover, the seal in this case runs from the date of the Court's order—January 31, 1977—rather than the dates the records were created—between 1963 and 1968, *see* H.R. Rep. No. 95-1828, pt. 2, at 415–16; *see also* Mem. Op. & Order at 3–4 (Jan. 31, 1977). Thus, the records have already been withheld from the public for between five to six decades from when they originated. There is virtually no marginal benefit to be gained from prolonging this already extended time for another year and nine months.

## CONCLUSION

For the foregoing reasons, the Court should modify its order of January 31, 1977, to expire on the day the Court grants this motion.

Dated: March 17, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:   */s/ Johnny Walker*
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2511

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

On March 17, 2025, I served this motion on the Southern Christian Leadership Conference by causing it to be mailed to its counsel at the following address:

Olivia N. Sedwick
Lawyers' Committee for Civil Rights Under Law
1500 K Street, NW, Suite 900
Washington, DC 20005

I also emailed a courtesy copy to:

osedwick@lawyerscommittee.org
cjones@lawyerscommittee.org
ssaleh@lawyerscommittee.org
ecaspar@lawyerscommittee.org

                                                  /s/ Johnny Walker
                                                  JOHNNY H. WALKER
                                                  Assistant United States Attorney