# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERNARD S. LEE,<br><br>*Plaintiff*,<br><br>v.<br><br>CLEARENCE M. KELLEY, *et al.*,<br><br>*Defendants*. | Civil Action No. 76-1185 |
| SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE,<br><br>*Plaintiff*,<br><br>v.<br><br>CLEARENCE M. KELLEY, *et al.*,<br><br>*Defendants*. | Civil Action No. 76-1186 |

### DECLARATION BY MARTIN LUTHER KING III

MARTIN LUTHER KING III, pursuant to 28 U.S.C. § 1746, states that I have personal knowledge of the facts set forth below and am competent to testify as follows:

1. I am the eldest son of the late Reverend Dr. Martin Luther King, Jr. and Mrs. Coretta Scott King. My sixteen-year-old daughter, Yolanda Renee King, is their only grandchild. Since my father's assassination in 1968, my late mother, my family and I have worked tirelessly in service to this nation and its highest ideals.

2. I have served as a former elected official, President of the Southern Christian Leadership Conference ("SCLC"), President of The Martin Luther King, Jr. Center for Nonviolent

Social Change, and I currently serve as the Chairman of the Board of the Drum Major Institute ("DMI"). I continue to work with my family to live out the legacy of my father and mother by uniting the country through community service. Along with my wife and daughter, we have dedicated ourselves to this mission. My daughter has established herself as an activist and addressed the United Nations General Assembly in 2024. She has chosen to carry on the King family legacy of promoting peace, justice and equity in our world.

3. I submit this declaration in connection with the SCLC's opposition to the Motion by the United States to Unseal Tapes and Documents (the "Motion") in the above-captioned action.

4. According to the filings in this case, the FBI extensively surveilled our father in his offices, hotel rooms, and our childhood home from 1963 -1968. This surveillance operation was intended to discredit my father and the civil rights movement writ large. I was only ten years old at the time of my father's murder. My sister Yolanda was twelve, my brother Dexter was seven and my youngest sibling, Bernice, was only five. Thus, the surveillance took place when we were all very young children. This surveillance of our father's private life was a violation of all of our rights and is part of a shameful and dark chapter in our nation's history.

5. Our family has long supported efforts to understand the facts surrounding our father's assassination. In fact, we went through a long, public civil trial in Memphis to examine the facts of our father's murder back in the 1990s, while our mother was still with us.

6. Respectfully, counsel for the United States in the Motion misinterprets our family's desire for transparency regarding our father's assassination as a desire to see a public release of

surreptitiously recorded moments in our private space, our sacred home. These surveillance recordings of our home in Atlanta have nothing to do with our father's murder in Memphis, hundreds of miles away. They will shed no light on the assassination that is the subject of the President's executive order.

7. Among the reasons cited in the Motion for unsealing the records of the 1960s FBI's spying on our family is that "the King family and the public deserve to see these records for themselves." (Mot. at 3, 4.) We respectfully disagree that the public release of the sealed records is a benefit for our family. We also disagree that our family and the general public stand on equal footing with respect to illicit recordings made of our family home. Private spaces by definition exclude the public; our family's privacy deserves the same protection and respect as any other family in America.

8. We understand that the purpose of these recordings was to discredit our father and harm the civil rights cause that he championed. Some, perhaps many, of the recordings may be fake. The FBI's purpose in creating the documents the government seeks to unseal was to misinform the public and irreparably damage our father's reputation and most importantly destroy the civil rights movement. Such an effort against a private citizen is unprecedented. In fact, such surveillance has not been perpetrated even against military or elected officials, even those residing in government property. Notably, my father did not hold elected office.

9. The surveillance of our father and his SCLC colleagues in their private lives have never undergone the scrutiny of a digital forensic examination or a review to address the privacy concerns of those recorded, nor have any historical scholars had an opportunity to examine these files for their veracity, context, or authenticity.

10. Although we can appreciate that there is some limited historical value in chronicling the FBI's misconduct, we believe it would be a disservice to the public to release these records divorced from the context necessary to understand them properly. Furthermore, there are likely recordings of such a private nature that whatever incremental historical value they have is outweighed by the harm their public release will cause to our family and to the families of others illicitly surveilled.

11. The release of the sealed files will be traumatic for our family. I say this as a son, a brother, a father and the one living person who has spent the most one on one intimate time with Martin Luther King, Jr.

12. In all, the release threatens to belatedly unleash J. Edgar Hoover's deception on the public by presenting misinformation as objective historical record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   April 2, 2025

*Martin King (Apr 2, 2025 15:46 EDT)*

Martin Luther King III