UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CLEARENCE M. KELLEY, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 76-1186 (RJL) |

**REPLY IN SUPPORT OF THE UNITED STATES'**
**MOTION TO UNSEAL TAPES AND DOCUMENTS**

The United States respectfully submits this reply in support of its motion to unseal tapes and documents. ECF No. 2. Contrary to the opposition filed by the Southern Christian Leadership Conference ("SCLC"), ECF No. 8, there is a "legal basis" for the government's motion. The Court's 1977 order sealing the tapes and documents about the Reverend Martin Luther King Jr. for fifty years affords the Court the continued discretion to direct the release of the sealed records, which discretion this Court has exercised in similar circumstances to inform an earlier inquiry about the King assassination.

The government has presented the Court with good cause to again exercise its discretion here. Granting the government's motion would trim only a relatively infinitesimal portion off the overall duration of the seal, while affording the public the great benefit of having any assassination records in the sealed materials released in conjunction with other records that will soon be released about the King assassination pursuant to Executive Order 14,176.

SCLC's opposition fails to weigh the relatively light burden of slightly shortening the seal with the heavy benefit of a more fulsome public understanding of the King assassination. Instead,

SCLC raises speculative and unfounded concerns about the possibility that the government will release privileged or personal communications recorded during the FBI's surveillance. Contrary to the SCLC's stated unease, however, the government has no intention of releasing privileged or personal communications. Its disclosures will be limited to materials about the assassination. The Court should therefore grant the government's motion to unseal.

**I.      The Court May Order the Records Unsealed for Good Cause.**

The government's motion explains that there is "good cause" to unseal the tapes and documents about the Reverend King because it will allow the Attorney General to include those materials in her broader review and release of documents about the King assassination pursuant to Executive Order 14,176. Mot. at 3–5. SCLC insists that there is no "legal basis" for the government's request to unseal, Opp'n at 6–7, but that ignores the text of the 1977 sealing order. That order explicitly says that the tapes and documents may be disclosed during the fifty-year seal "pursuant to a specific Order from a court of competent jurisdiction requiring disclosure." Mem. Op. & Order at 3, ECF No. 2-3. The order imposes no restrictions on the Court's ability to require such disclosure, allowing the Court to exercise its discretion when it finds good cause to do so.[1]

The Court has made use of this discretion in the past. In November 1978, less than two years after the sealing order went into effect, the Court directed the Archivist to "make available" some of the sealed materials to staff members of the House Select Committee on Assassinations as part of the Committee's inquiry into the King assassination. Docket at 2, ECF No. 1. That is similar to the context in which the government asks the Court to unseal the records here, except

---

[1]     Contrary to SCLC's implication, the government is not seeking "relief" from an order under Federal Rule of Civil Procedure 60(b). Opp'n at 7 n.10; it is asking the Court to exercise its retained discretion under the terms of that order to require disclosure of the sealed tapes and documents in this circumstance, Mot. at 3.

now the government does so at the tail end of the duration of the seal rather than at its outset. The Court has also ordered the disclosure of a summary of the sealed "contents" of some of the tapes and records, Mem. Op. & Order at 4, ECF No. 2-3, to a FOIA requester, after finding that the sealing order did not exclude those materials from FOIA's coverage. *Lesar v. Dep't of Just.*, 636 F.2d 472, 475–76 (D.C. Cir. 1980). These events show in practice what the text of the sealing order makes plain: the Court can direct the Archivist to disclose the sealed materials before the expiration of the fifty-year period for good cause. That is what the government asks the Court to do here.

**II.      There Is Good Cause to Unseal the Tapes and Records.**

The Court should exercise its discretion and unseal the tapes and documents so that the Attorney General may review them and release any that are related to the King assassination in compliance with Executive Order 14,176. Mot. at 3–5. The Court's sealing order has all but run its course. It will automatically dissipate in only about one-and-a-half years, on January 31, 2027.[2] That means that, as of this filing, the duration of the seal is already 96.3% lapsed. The effect of the government's request is therefore quite small. On the other hand, releasing the sealed materials to the Department of Justice slightly early will have the major benefit of allowing any assassination records included in those materials to be released in conjunction to the other documents about the King assassination that will be released pursuant to the Executive Order. This will give the public—including scholars, students, and the King family—a more complete understanding of the assassination and add additional context to any documents released from the sealed materials.

---

[2]      SCLC appears to assume that the 50-year duration of the seal runs from the date that the last batch of records was delivered by the FBI to the Archivist on October 26, 1977. *See* Opp'n at 5. But that is not what the order says. And starting the seal period on the date that the last set documents were delivered to the Archivist would have the effect of maintaining the seal on the earlier-delivered documents for longer than 50 years, which is plainly contrary to the Court's directive that the seal would last only 50 years.

SCLC fails to acknowledge that the sealing order will imminently end by its own terms and does not weigh the minuscule impact of releasing materials to the Department of Justice slightly early against the significant benefit of disclosing all available records about the King assassination together. Instead, SCLC advances arguments based on speculative and unfounded concerns that are easily dispelled. First, SCLC contends that the sealed tapes and documents contain materials that are unrelated to the Reverend King's assassination. Opp'n at 7–10. That is indisputably true, but unimportant. The government's disclosure to the public will include only materials related to the assassination. *See* Exec. Order 14,176, § 2(b), 90 Fed. Reg. 8641, 8642 (Jan. 23, 2025). The only way for the government to identify those materials, however, is to obtain custody from the Archivist of the all the sealed materials and review them. It is clear that the sealed records are likely to contain some information about the assassination. They were sought out and reviewed by a special Task Force of the Department of Justice and the House Select Committee on Assassinations as part of their respective investigations into the King assassination. Mot. at 4. SCLC purports to distrust the government's review process, based only on a media report that some social security numbers were inadvertently released in separate records about the assassination of President John F. Kennedy. Opp'n at 9 & n.12. But SCLC provides no reason to believe that any similar information would be inadvertently released here. Moreover, the article that SCLC cites notes that the government immediately removed the inadvertently released information and took steps to mitigate any impact from the disclosure, demonstrating that the releases were not purposeful.

The assassination-limited nature of the government's intended public disclosure also dispels SCLC's other stated objections to the motion to unseal. SCLC believes that the sealed materials are "highly likely" to include privileged communications between its officers and its

attorneys, Opp'n at 11–12, and materials that members of the King family wish to keep nonpublic, *id.* at 12–14, particularly "surveillance recordings of [the King family] home in Atlanta," M. King III Decl. ¶ 6, ECF No. 8-2, and surveillance of the Reverend King himself, B. King Decl. ¶ 11, ECF No. 8-3; *see also* Opp'n at 14–15 (arguing that the public has no interest in "surveillance tapes of private citizens"). These concerns are misplaced. Undersigned counsel is authorized to state on behalf of the Department of Justice that the Attorney General will not seek to disclose any attorney-client privileged or personal communications as part of its response to the Executive Order. Indeed, the Executive Order directs the Attorney General to release only materials about the King assassination. And because the FBI's surveillance recordings of the Reverend King and the SCLC occurred prior to the assassination on April 4, 1968, the surveillance tapes and transcripts themselves will presumably not be related to the assassination and therefore generally not released to the public. *See* H.R. Rep. No. 95-1828, pt. 2, at 415–16 (1979) (explaining that the sealed materials show that the FBI's surveillance concluded in 1965 or 1966).

Finally, SCLC implies that the public may be misled by the release of the sealed records because the FBI's motivations for surveilling the Reverend King were "corrupt." Opp'n at 15–18. But there is no reason to suspect that any assassination-related material in the sealed records would unfairly malign the Reverend King. Nor is there any reason to credit SCLC's unsupported speculation that some of the sealed materials "may be fake." *Id.* at 17 (quoting M. King III Decl. ¶ 8, ECF No. 8-2). Instead, the records are more likely to better inform the public about the scope and duration of the FBI's surveillance of the Reverend King. Potentially enlightening information about the historically important King assassination should not be withheld from the public based only on SCLC's speculation that the pubic would misunderstand it.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the government's opening motion, the Court should unseal the surveillance tapes and records and direct the Archivist to return them to the Department of Justice.

Dated: April 24, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:  /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2511

*Attorneys for the United States of America*