UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOUTHERN CHRISTIAN LEADERSHIP
CONFERENCE,

        Plaintiff,

   v.

CLEARENCE M. KELLEY, *et al.*,

        Defendants.

Civil Action No. 76-1186 (RJL)

**OPPOSITION BY THE UNITED STATES TO THE MOTION TO CORRECT
OR FOR RELIEF BY THE SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE**

      In its November 14, 2025, order denying the government's motion to unseal, the Court correctly noted that the seal will expire on January 31, 2027. Plaintiff the Southern Christian Leadership Conference ("SCLC") now contends—for the first time—that the seal will expire on January 23, 2028, pegged to when the FBI delivered a fifth batch of the sealed records to the Archivist of the United States. SCLC moves under Federal Rules of Civil Procedure 60(a) and 60(b)(1) for the Court to adopt that date as the end date of the seal. The motion should be denied. Rule 60(a) allows the Court to correct only "clerical" errors, but there is no indication in the record that the Court made a clerical error in failing to adopt a date that neither party proffered as the end date of the seal. SCLC also presents no legal error for the Court to correct under Rule 60(b)(1). The Court's 1977 sealing order contemplates that the records would already be under seal at the time they were delivered to the Archivist, not that the seal would begin only upon delivery. Moreover, SCLC's reading would defeat the purpose of the seal—because it would allow for a one-year delayed start to its effectiveness—as well as the plain text of the sealing order—because

it would result in most records remaining sealed for more than the specified fifty years. The Court should therefore deny the motion and make no modifications to its November 14, 2025, order.

## BACKGROUND

SCLC filed this action against the Director of the Federal Bureau of Investigation ("FBI") in 1976.[1] It alleged that, between 1963 and 1968, the FBI unconstitutionally monitored the conversations of its founder and president, Dr. King, and other SCLC employees. Am. Compl. ¶¶ 5–8 (ECF No. 2-2). SCLC demanded damages and an order that any recordings of the monitored conversations be produced under a protective order. *Id.* at 5 ¶¶ 1–3.

The government moved to dismiss, and Judge John Lewis Smith, Jr., granted the motion. Mem. Op. & Order at 3 (Jan. 31, 1977) (ECF No. 2-3). The Court agreed with the government that damages were barred by the applicable statute of limitations. *Id.* Pursuant to an apparent compromise agreement between the plaintiffs and the government, the Court directed the FBI to relinquish any tapes and records of the alleged recorded conversations to the Archivist of the United States. *Id.* at 3–4; *see also S. Christian Leadership Conf. v. Kelley*, 747 F.2d 777, 778 (D.C. Cir. 1984) (noting that this solution was "acceptable to the defendants"). Specifically, the Court ordered the FBI "within ninety (90) days" of the entry of the January 31, 1977, order to "assemble . . . all known copies of the recorded tapes, and transcripts thereof, resulting from the FBI's microphonic surveillance, between 1963 and 1968, of the plaintiffs' former president, Martin Luther King, Jr.; and all known copies of the tapes, transcripts and logs resulting from the FBI's telephone wire-tapping, between 1963 and 1968, of the plaintiffs' offices in Atlanta, Georgia and New York, New York, the home of Martin Luther King, Jr., and places of public accommodation

---

[1]    Another plaintiff, Bernard Lee, who was an associate of Dr. King, brought a related lawsuit. Am. Compl. (ECF No. 2-1). The two cases were considered and decided together.

occupied by Martin Luther King, Jr." and to "deliver said tapes and documents to the custody of the National Archives and Records Service, to be maintained by the Archivist of the United States under seal for a period of fifty (50) years." Mem. Op. & Order at 3–4 (ECF No. 2-3). The Archivist was instructed to "not disclose the tapes or documents, or their contents, except pursuant to a specific order from a court of competent jurisdiction requiring disclosure." *Id.* at 4. The Court allowed that the records could be disclosed "pursuant to a specific Order from a court of competent jurisdiction requiring disclosure." *Id.*

The FBI sought and was granted two extensions of time, ultimately to October 26, 1977, to fully comply with the Court's order. Docket at 4 (ECF No. 1). It delivered the records to the National Archives in batches on April 29, July 28, and October 26, 1977. *Id.* It also provided two supplemental sets of documents on January 23, 1978, and November 6, 1983. *Id.* at 4, 6.

On March 17, 2025, the United States moved to lift the seal so that the sealed records could be reviewed for potential release pursuant to Executive Order 14,176, which directs, among other things, that the Attorney General of the United States review records related to the assassination of Dr. King and present a plan "for the full and complete release of these records." 90 Fed. Reg. 8641, 8642 (Jan. 23, 2025). The government's motion noted that the seal would terminate fifty years from when it began: on January 31, 2027. Mot. to Unseal at 1 (ECF No. 2). SCLC filed an opposition to the motion to unseal in which it disputed the end-date used by the United States. According to SCLC, all of the records would be sealed for fifty years following the October 26, 1977, date that the Court gave the FBI to fully comply with its order; so, until October 26, 2027. Opp'n at 2027 (ECF No. 8). SCLC therefore requested the Court to order that the files would "remain sealed and in the custody of the National Archivist until October 26, 2027." Prop. Order at 2 (ECF No. 8-4). In its reply, the government argued that SCLC's end date cannot be correct

because it would result in the seal on the earlier-delivered records lasting longer than fifty years, which is contrary to the plain terms of the sealing order. Reply at 3 n.2 (ECF No. 10). The Court denied the motion to unseal. It noted that the public has an interest in the sealed records, but concluded that the parties had agreed to the fifty-year seal and the Court would not cut that short over SCLC's objection, especially given that "the seal causes a mere delay" to the Attorney General's review. Order at 2–3 (ECF No. 16). The Court noted in its order that the seal on the records "expires on January 31, 2027," and did not grant SCLC's proposal to order the records to remain sealed until October 26. 2027. *Id.* at 2.

SCLC moves for a correction to or for relief from the Court's order. It now insists—for the first time ever—that the seal on the records will not expire until January 23, 2028, and that it must have been a clerical mistake for the Court not to have adopted this date (even though no party asked for it). Mot. to Correct at 1, 5. In the alternative, SCLC requests relief from the order under Federal Rule of Civil Procedure 60(b)(1), asserting that the Court's reference to January 31, 2027, as the end of the seal is "legally incorrect." *Id.* at 6. SCLC assumes that the records were sealed by the Archivist—not the Court—and infers that the seal therefore did not commence until the FBI provided a supplemental delivery of records to the Archivist on January 23, 1987. *Id.* at 2, 4. It asks the Court to enter an order stating that "the seal on the MLK Files will expire on January 23, 2028." Prop. Order at 1 (ECF No. 17-1). The United States respectfully opposes the motion.

## ARGUMENT

### I.   Rule 60(a) Does Not Provide a Basis for the Relief SCLC Seeks.

Rule 60(a) is not an appropriate means for SCLC to ask the Court to impose its preferred end date on the seal. That rule allows the Court to "correct a clerical mistake or a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). It is "narrowly construed," *Jordan v. Dep't of Lab.*, 331 F.R.D. 444, 449 (D.D.C. 2019), and covers "only the small subset of mistakes that can

be categorized as clerical." *Greenspan v. Exec. Off. for U.S. Att'ys*, No. 23-cv-1816, 2023 WL 12137661, at *2 (D.D.C. Nov. 21, 2023) (citing *Kemp v. United States*, 596 U.S. 528, 537 (2022)). Courts in this district have held that the rule "only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." *Fanning v. George Jones Excavating, LLC*, 312 F.R.D. 238, 239 (D.D.C. 2015) (quoting 11 Wright & Miller, *Federal Practice & Procedure* § 2854 (3d ed. 2012)). In other words, it allows relief only "when the record indicates that the court intended to do one thing but, by virtue of a clerical mistake or oversight, did another." *Id.* (quoting 12 *Moore's Federal Practice* § 60[1][a] (3d ed. 2015)). If the requested change "affects the substantive rights of the parties," then it is "beyond the scope of the rule." *Baldwin v. Granholm*, No. 21-cv-2646, 2023 WL 2894309, at *1 (D.D.C. Apr. 11, 2023) (citation modified).

SCLC insists that the Court "inadvertently" failed to adopt January 23, 2028, as the end date for the seal. Mot. at 5–6 (ECF No. 17). But the "record [does not] indicate[]" that the Court "intended" any such thing. *Fanning*, 312 F.R.D. at 239. Neither of the parties in briefing on the government's motion to unseal took the position that the seal ended in January 2028—fifty years from the first of two deliveries of supplemental records to the National Archives—nor has the Court ever expressed such a view. The record thus lacks any indication of the Court's intention to use the end date that SCLC now urges for the first time.

To the contrary, all indications in the record are that the Court intended to use January 31, 2027, as the end date of the seal. The end date was specifically disputed and discussed by the parties in their succinct and unconvoluted briefs. The government's motion expressed the view that January 31, 2027, was the end date of the seal. Mot. at 1 (ECF No. 2). SCLC took a contrary position, insisting that the end date was fifty years from the October 26, 2077, extended date for

the government to fully comply with the Court's directive to deliver the sealed records to the Archivist, which date SCLC requested that the Court adopt in an order denying the government's motion to unseal. Opp'n at 5 (ECF No. 8); Prop. Order at 2 (ECF No. 8-4). The government highlighted this disagreement in its reply, arguing that SCLC's interpretation cannot be correct because it would result in some documents being sealed for over fifty years even under SCLC's own reading of when the seal commenced. Reply at 3 & n.2 (ECF No. 10). Counsel for SCLC also referred to the parties' competing positions on this issue during the hearing on the government's motion to unseal. Hr'g Tr. at 6:2–11 (ECF No. 11). Apprised of these competing positions and the bases for them, the Court specifically noted in its order that the seal will expire on January 31, 2027, and declined SCLC's request to enter an order adopting October 26, 2027, as the end date. And the nearing end date was one of the Court's reasons for denying the motion to unseal. It noted that the denial would result in "mere delay" before the seal would expire and the records could be reviewed for any assassination documents. Order at 3 (ECF No. 16). Thus, nothing in the record indicates that the Court intended to—or was asked to—adopt January 23, 2028, as the end date of the seal.

SCLC points to remarks by the Court at the motion hearing as the sole basis in the record for this Court's purported intent to adopt January 23, 2028, as the end date of the seal. Mot. at 5–6. But the Court did not say anything about January 2028; to the contrary, it mentioned "the fall of two years from now, '27." Hr'g Tr. at 6:5–6 (ECF No. 11). And the Court specifically noted that it was "not certain" that was "the correct end date." *Id.* at 6:10. Critically, following that hearing, the Court in its formal written order made the much more certain statement that the seal "expires on January 31, 2027." Order at 2 (ECF No. 16). The record therefore does not support

SCLC's contention that the Court's failure to use January 23, 2028, as the end date was "inadvertent[]." Opp'n at 6 (ECF No. 17).

SCLC also argues that the Court's adoption of January 31, 2027, as the end date would not "give full effect to the intent" of the original sealing order. Mot. at 5 (ECF No. 17). But that is not a proper reason for a motion under Rule 60(a), which is limited to correcting the "small subset of mistakes that can be categorized as *clerical*," not mistakes that the moving party believes to be legally incorrect. *Greenspan*, 2023 WL 12137661, at *2 (emphasis added). Relief under Rule 60(a) should be denied on that basis alone. In any event, as explained in more detail below, the seal expires on January 31, 2027, and the Court was not incorrect to use that date.

## II.    SCLC Is Not Entitled to Relief under Rule 60(b)(1).

SCLC fails to identify any mistake warranting correction under Rule 60(b)(1). That provision allows the Court to "relieve a party" of an order on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). One type of "mistake" that may be corrected under Rule 60(b)(1) is "a judge's legal errors," such as "overlooking controlling statutes or case law" or "the misapplication of 'controlling law to record facts.'" *In re Rosebar*, No. 23-cv-1046 (RDM), 2025 WL 3458874, at *13 (D.D.C. Nov. 28, 2025) (quoting *Kemp*, 596 U.S. at 534).

The Court committed no "legal error" in not identifying January 23, 2028, as the end date of the seal. *Kemp*, 596 U.S. at 534. The fifty-year seal over the FBI's surveillance records began on January 31, 1977, when the Court entered the order. That is indicated by the language of the order requiring that the records be "turned over, under seal, to the Archivist of the United States." Mem. Op. & Order (Jan. 31, 1977) (ECF No. 2-3). That phrasing contemplates that the records were already "under seal" as a consequence of the Court's order at the time that they were "turned over" to the Archivist. *Id.* The seal therefore runs for fifty years from the Court's order, expiring on January 31, 2027.

SCLC's position that the seal did not commence until the FBI delivered the first of two supplemental batches of materials (and the fifth delivery overall) to the Archivist on January 23, 1978, is implausible for two reasons. First, by SCLC's reading, the Court would have left a one-year gap between its January 31, 1977, order and the commencement of the seal, during which the surveillance records could have been disclosed by either the FBI, which was collecting them, or the Archivist, which was receiving them in tranches. Allowing such a gap would defeat the purpose of the seal and is therefore not a sound reading of the order.

Second, SCLC's reading contradicts itself. The parties at least agree that, whenever the seal began, it was to last only "for a period of fifty (50) years." Mem. Op. & Order at 4 (ECF No. 2-3); *see also* SCLC's Mot. at 7 (ECF No. 17) ("The Sealing Order plainly contemplated a 50-year seal on the entirety of the MLK Files."). But SCLC's preferred end date of January 23, 2028, would, under SCLC's own reading, result in a longer seal for most of the records. If, as SCLC contends, the seal began upon delivery of records to the Archivist, then the first batch of records delivered by the FBI to the Archivist on April 29, 1977, would become sealed on that date but would not become unsealed until January 23, 2028, which is over fifty years by many months. Thus, SCLC's position on the start date of the seal conflicts with its own acknowledgement that the seal was to last no more than fifty years.

SCLC apparently believes its position to be supported by the sealing order's directive that the records be "maintained by the Archivist of the United States under seal for a period of fifty years." Mot. at 2 ¶ 3 (quoting Mem. Op. & Order at 4 (ECF No. 2-3)). But the phrase "for a period of fifty years" is best read to apply only to the immediate antecedent "under seal," thus describing only how long the records would remain "under seal," not how long they would be "maintained by the Archivist." *Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("a limiting clause or phrase

should ordinarily be read as modifying only the noun or phrase that it immediately follows" (citation modified)); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012). This reading is especially appropriate here, given the considerations discussed above: the indication in the order that the records would already be "under seal" at the time they were "turned over" to the Archivist, the implausibility of interpreting the seal as having a one-year delayed start, and the self-contradiction between SCLC's assertion that the seal began when the fifth batch of records was delivered to the Archivist and its acknowledgement that the seal was to last no more than fifty years.

Finally, adopting SCLC's position that the seal will last until 2028 conflicts with the longstanding understanding of scholars and the public that the seal will expire in 2027. Scholars who study and write about King and the news media have consistently understood and represented to the public that the seal governing the surveillance records will expire in 2017. History News Network, *Two MLK Scholars Discuss Explosive, Disputed FBI Files on the Civil-Rights Icon* (June 30 2019) (statements by King scholars and biographers David Garrow and Michael Honey), https://perma.cc/JMV3-JFFF; University of Southern California Today, *After screening of 'MLK/FBI,' filmmaker and audience consider how surveillance of King affected his legacy* (Jan. 20, 2023), https://perma.cc/4X62-JWCH; New York Times, *The New Definitive Biography of Martin Luther King, Jr.* (May 8, 2023), https://perma.cc/4LDQ-7BBY; NPR, *Trump administration releases files on Martin Luther King Jr. assassination* (July 22, 2025) (statement by King biographer Michael Eric Dyson), https://perma.cc/9MWU-N6G9. The Court should not suddenly disappoint those expectations in the last year of the seal based on SCLC's newfound and erroneous reading of the sealing order.

\*     \*     \*

## CONCLUSION

For the foregoing reasons, the Court should deny SCLC's motion.

Dated: January 28, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH, D.C. Bar #496632
Chief, Civil Division

By:  _____/s/ Johnny Walker_____
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2511

*Attorneys for the United States of America*